JUDY ROBSON, individually,

    Plaintiff and Moving Party, and

REV. OLEN ARRINGTON, JR., ALVIN BALDUS,
STEPHEN H. BRAUNGINN, JOHN D. BUENKER,
ROBERT J. CORNELL, V. JANET CZUPER,
LEVENS DE BACK, STEVEN P. DOYLE,
ANTHONY S. EARL, JAMES A. EVANS,
DAGOBERTO IBARRA, JOHN H. KRAUSE, SR.,
JOSEPH J. KREUSER, FRANK L. NIKOLAY,
MELANIE R. SCHALLER, ANGELA W.
SUTKIEWICZ, and OLLIE THOMPSON,

    Original Plaintiffs,

  and                                      Case No. 01-CV-121 / 02-CV-0366
                                                                       Three-Judge Panel (Clevert, J., presiding)

JAMES R. BAUMGART, ROGER M. BRESKE,
BRIAN T. BURKE, CHARLES J. CHVALA,
RUSSELL S. DECKER, JON ERPENBACH,
GARY R. GEORGE, RICHARD GROBSCHMIDT,
DAVE HANSEN, ROBERT JAUCH, MARK
MEYER, RODNEY MOEN, GWENDOLYNNE S.
MOORE, KIMBERLY PLACHE, FRED A. RISSER,
KEVIN W. SHIBILSKI, ROBERT D. WIRCH,
SPENCER BLACK, JAMES E. KREUSER,
SPENCER G. COGGS, and GREGORY B. HUBER,
each individually and as members [or, now, former
members] of the Wisconsin State Legislature,

    and

(caption continued on next page)

# BRIEF IN SUPPORT OF PLAINTIFF'S RULE 60(b) MOTION
## FOR RELIEF FROM JUDGMENT

F. JAMES SENSENBRENNER, JR.,
THOMAS E. PETRI, MARK A. GREEN,
and PAUL RYAN, each individually and as
members [or, now, former members] of the
United States Congress,

                Original Intervenor-Plaintiffs,

    and

G. SPENCER COGGS, LEON YOUNG,
ANNETTE POLLY WILLIAMS,
JOHNNIE MORRIS-TATUM,

                Additional Original Intervenor-Plaintiffs,

    v.

JERALYN WENDELBERGER, chairperson of
the State of Wisconsin Elections Board, and each
of its members [or former members] in his or her
official capacity, JOHN P. SAVAGE, DAVID
HALBROOKS, R.J. JOHNSON, BRENDA LEWISON,
STEVEN V. PONTO, JOHN C. SCHOBER,
CHRISTINE WISEMAN and KEVIN J. KENNEDY,
its executive director;

                Original Defendants,

SCOTT R. JENSEN, in his capacity as the [former] Speaker
of the Wisconsin Assembly, and MARY E. PANZER,
in her capacity as the [former] Minority Leader of the
Wisconsin Senate,

                Intervenor-Defendants.[1]

---

On May 30, 2002, this Court entered an order and judgment that: (1) declared the then-existing state legislative districts unconstitutional; (2) enjoined all elections under the

---

[1] This is the original caption with bracketed material that reflects the change in status for some of the parties. The Elections Board itself became the Government Accountability Board in 2008, by statute, and none of the original member-defendants remains. Kevin Kennedy, the board's executive director, retains that position in the reconstituted state agency.

unconstitutional districts; and, (3) established new legislative districts. *Baumgart v. Wendelberger*, 2002 WL 34127471 (E.D. Wis. May 30, 2002) (*per curiam*) (three-judge panel), *amended by* 2002 WL 34127473 (E.D. Wis. July 11, 2002) ("*Baumgart*").[2] One of the original plaintiffs, Judy Robson, now asks this Court to provide relief from that order and judgment because the population growth and population shifts disclosed in the 2010 Census data invalidate, in effect, the Court's 2002 order. The districts' populations are no longer equal, no longer constitutional, rendering this Court's order and judgment—through the passage of time and changes in population—inequitable. No longer is there a guarantee of "one person, one vote."

## ARGUMENT

Under Rule 60(b)(5) or (6), this Court should set aside its prior judgment and, in the absence of a valid statutory enactment, establish new legislative districts for the 2012 elections. In May 2002, this Court concluded that the then-existing state legislative districts were unconstitutional and established new legislative districts. Its order divided the state into districts based on the 2000 Census data with each state senate district containing a population of approximately 162,536 residents and each assembly district containing a population of approximately 54,179 residents. *See Baumgart*, 2002 WL 34127471. The state legislature has never altered, supplemented or supplanted that order.

Given the population growth and population shifts enumerated in the 2010 Census, that May 2002 judgment, as amended, is no longer valid. The 2010 census reflects significant population growth and population shifts during the last decade among Wisconsin's 33 Senate districts and 99 Assembly districts. The result: an unconstitutional malapportionment of legislative districts. The voting strength of Wisconsin residents who reside in relatively

---

[2] This Court amended the order in July 2002 for technical reasons.

over-populated districts is diluted. The weight or value of any and every voter in relatively overpopulated district is, by definition, less than that of any and every voter in a relatively under-populated district.

Whether legislative district boundaries are court-ordered or legislatively-enacted, changed circumstances—notably, population growth and population shifts measured in the census—create new conditions that render the decade-old legislative districts no longer constitutional. The district boundaries must be redrawn. In *Jackson v. De Soto Parish Sch. Bd.*, 585 F.2d 726, 728-29 (5th Cir. 1978), the U.S. Court of Appeals explicitly acknowledged that "reapportionment plans … are not immutable" and that "[t]he judicial process must be flexible enough to allow challenges to schemes that have, because of changing population patterns …[,] become unconstitutional in their operation." *Id.* at 728. The Sixth Circuit has similarly reasoned that federal courts have great latitude in fashioning remedies for constitutional violations in reapportionment cases. *See Rader v. Cliburn*, 476 F.2d 182, 184 (6th Cir. 1973).

When a court issues a judgment, that court can maintain or reassert jurisdiction for the same issues and same parties in subsequent stages of litigation. *See King v. State Bd. of Elections*, 979 F. Supp. 582, 588-89 (N.D. Ill.) (*citing Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir. 1991) (other citations omitted)), *vacated*, 519 U.S. 978 (1996). Where the prior judgment is no longer equitable based on changed circumstances, the court has the authority to set aside its earlier judgment and to issue a subsequent, equitable judgment based upon the new circumstances. *See* Fed. R. Civ. P. 60(b); *King v. State Bd. of Elections*, 979 F. Supp. at 589. Of course, setting aside a judgment is extraordinary, and any party seeking such a remedy must provide clear and convincing reasons. *Id.*; *see Williams v. Hatcher*, 890 F.2d 993, 995 (7th Cir. 1989) (rule requires "exceptional circumstances").

Extraordinary relief is warranted here. The Wisconsin state legislature—to date—has failed to even introduce legislation to redraw the legislative district boundaries. Indeed, there has not been a legislatively-enacted districting plan for the legislature in this state for at least 30 years.[3] All of the district boundaries have been judicially-mandated.

An order setting aside this Court's May 2002 judgment would promote judicial economy and continuity. Should this Court conclude it should or must draw the new boundaries, it will need to do what it has done before: take evidence, evaluate competing proposals, and establish the new legislative boundaries—all with enough time to allow the Government Accountability Board, as well as potential candidates, to comply with statutory deadlines leading up to the regularly scheduled September 11, 2012 primary and November 6, 2012 general elections.

To be sure, redistricting litigation is complex. This Court spent a significant amount of time digesting evidence and theories to develop constitutionally-permissible and fair legislative districts ten years ago. This Court's familiarity with the redistricting process will result in judicial economy. In addition, this Court's approach to the 2002 redistricting litigation was methodical and reasoned. (The state legislature never questioned it by adopting or even trying to adopt a legislative districting plan.) Another court may or may not choose to follow the same approach.

Moreover, this is not an attempt to re-litigate issues decided ten years ago. The Court's decision then was not appealed. The voters, elected officials and candidates of this state have, by silence if nothing else, not expressed dissatisfaction with it. But the constitutional facts have changed. The 2010 census changed them, rendering unconstitutional what was in 2002 demonstrably constitutional, and it is this "change in the conditions that makes continued

---

[3] *Prosser v. Elections Board*, 793 F. Supp. 859 (W.D. Wis. 1992); *Wisconsin State AFL-CIO v. Elections Board*, 543 F. Supp. 630 (E.D. Wis. 1982); and *Republican Party of Wisconsin v. Elections Board*, 585 F. Supp. 603 (E.D. Wis. 1984).

enforcement [of the prior order and judgment] inequitable," requiring the grant of the motion. *De Filippis v. United States*, 567 F.2d 341, 344 (7th Cir. 1977).

The plaintiff's Rule 60(b) motion has been filed neither too late nor too soon. The rule itself notes that the motion must be filed within a "reasonable time." Only motions under the first three subsections of the rule, none applicable here, have a time limit of one year after the entry of the judgment or order at issue. Here, the motion could not have been brought at all before the release of the 2010 census data, which occurred on March 9, 2011. Nor is the motion premature.

More than ten years ago, on February 1, 2001, voters filed suit in this Court seeking a declaratory judgment that the apportionment plan for Congressional districts (legislatively enacted in 1992) was unconstitutional. They asked for an injunction barring elections under that plan "and, in the absence of subsequent action by state legislators, the institution of a judicially-crafted redistricting plan." *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 858 (E.D. Wis. 2001) (three-judge panel). Even though the state legislature then "had not yet attempted to create a constitutional apportionment plan," the Court found that the "complaint as filed does present a justiciable case or controversy." *Id*. at 859. "[C]hallenges to districting laws may be brought immediately upon release of official data showing district imbalance...," *id*. at 860, because existing legislative boundaries become "'instantly unconstitutional.'" *Id*. (citation omitted).

This Court, with Judge Easterbrook dissenting, fully discussed the concepts of standing, ripeness and jurisdiction. It noted the partisan political division in the state legislature, a division that does not exist today, and concluded that it was "irrelevant for standing purposes that the harm may not develop and that the plaintiff may not [ultimately] be entitled to relief." *Id*. at 862.

6

Accordingly, the Court declined to dismiss the case—filed, notably, more than four months *before* this motion in the analogous time period—or apply any abstention doctrine.

> Boiled down to the bare essentials, there is a case or controversy in this case because Wisconsin's current apportionment law is unconstitutional.... The alleged harm is not hypothetical. While injury is by no means certain, the plaintiffs' fear of injury is realistic.

*Id*. at 866.

This Court nonetheless, as a matter of comity, stayed the proceedings for several months "until the appropriate state bodies have attempted—and failed—to do so on their own." *Id*. at 867. They did attempt, and they did fail. *See generally*, *Baumgart*. This motion is in the same procedural posture as the 2001 complaint, and the plaintiff seeks the same relief. Following the precedent in *Baumgart*, the Court should reassert jurisdiction and, if it deems necessary, stay the matter until a date certain, allowing the state legislature the opportunity to exercise its responsibility. However, as this Court did 10 years ago, it should retain jurisdiction because the state may fail to meet its obligation to draw constitutionally-apportioned legislative districts within a time period that allows the Government Accountability Board, potential candidates and Wisconsin citizens sufficient time to prepare for the regularly scheduled 2012 fall elections.

It is also noteworthy that Rule 60(d) does not "limit" in any way the Court's authority to adjudicate an "independent action" to relieve a party from a "judgment, order or proceeding." In the interests of jurisdictional caution, the plaintiff—joined by others—intends to do that, filing in this Court an independent action under 42 U.S.C. § 1983 embodying the essential allegations of this motion. The Court can choose to proceed on either (though not both) or neither (though the decision in *Baumgart* establishes that it has jurisdiction to proceed).

The only way to ensure continuity in Wisconsin's redistricting litigation is for this Court to reassert jurisdiction, even provisionally, over the redistricting process. Due to the inherently political nature of drawing district maps, redistricting litigation is susceptible to forum shopping. This Court's decision to set aside its May 2002 judgment—and preside over subsequent redistricting litigation made necessary by changed circumstances—will prevent it.

## CONCLUSION

Following the 2010 Census, there can be no question that Wisconsin's legislative district boundaries must be redrawn to comply with well-established constitutional standards. This Court should set aside its May 2002 order and judgment and preside over the redistricting process to protect constitutional rights and to promote judicial economy and continuity.

Dated: June 9, 2011.

GODFREY & KAHN, S.C.


By:   *s/ Rebecca Kathryn Mason*
Rebecca Kathryn Mason
State Bar No. 1055500
Brady C. Williamson
State Bar No. 1013896
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI  53701-2719
Telephone:  608-257-3911
Facsimile:  608-257-0609
rmason@gklaw.com

*Attorneys for Judy Robson*

6384817_3

8
Case 2:01-cv-00121-CNC   Filed 06/09/11   Page 8 of 8   Document 454